BARNS, PAUL D., Associate Judge.
Ernestine McKnight, Cornell McKnight and LeRoy McKnight were by information charged with receiving and aiding in the concealment of stolen goods and property when they each knew that the same had theretofore been stolen, a violation of section 811.16, Florida Statutes 1961, F.S.A. Ernestine was acquitted but Cornell and LeRoy were found guilty and were sentenced after their motions for new trial were denied. Thereupon, Cornell and Le-Roy appealed; we affirm as to Cornell but reverse as to LeRoy.
Our conclusions from the record show that Sam (Peanuts) Grantley and Gene Mathis, after breaking and entering, stole merchandise from a Western Auto Store on Sunday night, February 10, 1963, and from a Top Value Stamp Redemption Store the night of February 11, 1963, or the early morning of February 12, 1963. Both stores were located in Sarasota.
The goods stolen from Western Auto on Sunday were stored in a vacant house across the street from where Cornell and' Ernestine McKnight lived; the goods stolen from Top Value on Monday night were then taken by both thieves (Grantley and Mathis) to the McKnight home around 4:30 or 5:00 a. m. on Tuesday, February 12, 1963, and hidden in the attic at the direction of Cornell McKnight; then the Western Auto *853 .goods were retrieved from the vacant house -and brought to the McKnight house, whereupon all the goods were divided up between ■the two thieves early Tuesday morning.
The testimony of Sam (Peanuts) Grantley is the only testimony tending to show that LeRoy was told that the goods were stolen •or that he received a stolen camera, and even this testimony is not very positive and direct when taken collectively.
Gene Mathis, one of the thieves, testified that he did not see LeRoy at the McKnight 'home; Ernestine McKnight (otherwise known as Sadie) testified that LeRoy was -not there; Cornell testified that LeRoy was not there; LeRoy testified that he was not there and that the thieves never gave '.him anything.
LeRoy testified that he went to work on Monday; that it started raining and he •didn’t go back home that night but stayed -at James Brown’s house, as he sometimes did; and that he was gone to Georgia with William McCoy from Tuesday to Thursday. William McCoy testified that they left for Georgia on Monday, spent Monday night In Georgia and departed Tuesday night, arriving home Wednesday a. m. between 4 and 5 o’clock. Neither version placed LeRoy at the McKnight house on Tuesday morning when the thieves brought in the loot and divided it
The interrogation of Sam (Peanuts) Grantley relative to LeRoy being told that the goods were stolen and receiving a camera with knowledge that it had been stolen was as set forth in the margin.[1] This is the only substantial evidence against LeRoy.
When the contradictory testimony concerning LeRoy’s presence at the McKnight home is considered together with the alibi testimony and the weakness of Grantley’s testimony as to LeRoy’s having received the stolen camera and that he knew it was stolen, it is our conclusion that the court erred in not granting LeRoy McKnight a new trial.
The judgment is affirmed as to Cornell McKnight for the want of a reversible error, and the judgment against LeRoy McKnight is reversed for a new trial.
SMITH, C. J., and KANNER, J., concur.

“Q. Could it have been March?
“A. No, I don’t think it was March.
“Q. When you took this property into your brother-in-law’s house, who was present?
“A. Well, I didn’t see nobody exactly but my brother-in-law when I first came to the house. He was sleeping on the sofa when I came in with my partner.
“Q. Hid you see anybody else there that night'?
“A. Yes, I seen LeRoy, and I didn’t see •Sadie until the next morning.

“Q. Did you talk to either of the Defendants about this property that you had?
“A. Yes, I did.
“Q. Who did you talk to?
“A. I was talking to my brother-in-law, Cornell McKnight.
“Q. What were you talking about?
“A. The first I came in there and asked him to spend the night. He said yes, because it was raining. I brought the suitcases in there. He asked me where did I get the stuff. I told him me and my partner had broken in the Top Value place and gotten the goods out.
“Q. How long did you stay there?
“A. I think approximately two days.
“Q. When you left there did you take that property with you?
“A. Yes, I took most all of it. I took some of it but not all of it.
“Q. What did you do with the rest of it, the part you didn’t take ?
“A. Me and my partner split it up, and then I gave back Sadie McKnight a camera and LeRoy.
“Q. What about the radios?
“A. I gave Cornell a radio, and I think I gave Sadie one. I didn’t give LeRoy one.